# Wallace *v.* The State.

### *Violating Prohibition Law.*

(Decided June 10, 1913.   Rehearing denied June 19, 1913.
62 South. 365.)

1. *Intoxicating Liquors; Unlawful Drinking Place; Illegal Purposes.*—Under section 5, Acts 1909, p. 10, and section 22, Acts 1909, p. 74, liquor owned by a member of an Elk's Club and kept in his locker to be drunk by him at the Club, may be forfeited; it appearing that the members generally kept liquors in their locker, the maintenance of such system constituting an unlawful drinking place within the terms of the statute.

2. *Constitutional Law; Province of Judiciary.*—It is a matter for the legislature to determine whether laws prohibiting the members of a club from keeping liquor therein for their own personal use is an unwise regulation of the liberty of the citizen, and it cannot be determined by the court.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

From a judgment refusing restoration to claimant, and entering a forfeiture as to intoxicating liquors, B. P. Wallace appeals. Affirmed.

O. KYLE, and EYSTER & EYSTER, for appellant. Under the agreed statement of facts in this case, the judgment in the lower court was erroneous.—*City of Bessemer v. Edge,* 50 South. 371; *Toole v. State,* 170 Ala. 41.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The judg-

ment is proper under the agreed statement of fact.—Sec. 5, Acts 1909, p. 10; Secs. 19 and 20, Acts 1909, p. 73.

THOMAS, J.—Section 5 of the act approved August 9, 1909 (see Acts Sp. Sess. 1909, pp. 10, 11), makes it unlawful for any person, firm, or corporation, directly or indirectly, to keep or maintain or in any manner to aid or abet in keeping or maintaining an unlawful drinking place, which is defined by the section as follows: "(1) Any place or resort where the prohibited liquors or beverages, or any of them are kept to be drunk upon or about the premises by persons resorting there for that purpose; (2) any clubroom or other place in which are received or kept for the purpose of barter or sale, or use, or gift as a beverage, or for distribution or division among or furnishing to or use by members of any club or association of persons by any means whatever the prohibited liquors and beverages, or any of them, referred to in section 1 of this act; (3) any clubroom or room of any association of persons in which said prohibited liquors or beverages, or any of them, are kept or stored for the purpose of being drunk or consumed by the members of such club or other association of persons or their guests or others on the premises, or at or near the place where such liquors or beverages, or any of them, are kept or stored; (4) any place adjacent to or near the premises of any club, corporation or association, or other combination of persons to which members or their guests or others, by the permission of members, resort for the purpose of drinking the prohibited liquors and beverages, or any of them, that are kept at or near such place." Section 22 of a subsequent act, which was approved August 25, 1909, known as the "Fuller Bill" (Acts Sp. Sess. 1909, p. 74 et seq.), provides for and authorizes the issuance of search warrants

for the seizure and destruction of prohibited liquors and beverages in certain enumerated cases, among them the following, which are set out in subdivision 6 of said section 22 of the act, to wit: "(a) * * * When such [prohibited] liquors and beverages, or any of them, are stored for sale, delivery or distribution contrary to law or for *other illegal purposes* in any warehouse *or other place.* (b) When such prohibited liquors or beverages, or any of them, are in the possession of any person, firm, * * * or corporation conducting on the premises an unlawful drinking place or maintaining a liquor nuisance thereon by means thereof."

Under the authority and in compliance with the provisions of the statute, the affidavit in this case was made and a search warrant was duly issued thereon, authorizing a search of a certain described building in the city of Decatur, known as the Elks' Clubrooms, and a seizure of any prohibited liquors found therein in the possession of Bluitt Wallace, the claimant here, who, in the affidavit, was alleged to have been keeping or storing such liquors on said premises for illegal purposes, etc. The sheriff duly executed the warrant, and made a return showing that he had searched the premises named, and found and seized one-half quart of Deep Spring whisky and six pint bottles of beer. Upon this return of seizure, notice was issued and served upon Wallace, and he made claim to the liquor and beer. The issue on the trial in such case under the provisions of the statute is in effect (briefly stated) whether the liquor or beer was kept for unlawful purposes or not. If the court is satisfied from the evidence that it was then a judgment of condemnation follows and an order for the destruction of the liquor, etc.; but, if the court is not so satisfied, then an order is made restoring the liquor to the possession of the claimant.—Acts Sp. Sess.

1909, p. 77 et seq. In the present case the court did the former—the trial being had upon an agreed statement of facts. The claimant appeals, bringing this agreed statement of facts before us in a bill of exceptions, and insisting that these facts are such as not to warrant or sustain the finding and conclusion of the court. We cannot agree to this contention. Said agreed statement of facts (being brief) is here set out, as follows: "The sheriff seized upon the premises described in the affidavit and writ of search for seizure six bottles of beer and a part of a quart bottle of whisky in a locker among a number of other lockers, on the premises. Said lockers had been in the place described for six or seven years. The defendant Wallace admitted the liquors were his. Wallace alone had a key to this locker, and he alone had access to the same. The place where the liquors were seized was in an anteroom adjoining the Elks' Lodge room, and was a room used by the members of the lodge only. Defendant was a member of the local lodge of Elks, which rented and controlled the whole of the second floor of the building and premises described in the affidavit in this case. No liquor has ever been sold, or given away, or otherwise distributed upon said premises, but each member of the order, if he desired, would order away from Decatur, from without the state, some of the prohibited liquors. In fact, a number of the members did order, and keep in lockers, beer and whisky. The liquors received by the members were put in their individual lockers, and no person had access to the locker except the member who owned the same, and who kept it under lock and key for his own use. Some or other of the members frequently—in fact, every day —drank beer and whisky from their individual lockers. A servant was kept to wait upon the members. An ice box was kept, so that any member, if he

wished, could keep his beer on ice. None of said liquors were kept for sale, to be given away, or otherwise distributed, except to the owners for their individual use, as above described." This agreed statement of facts shows too clearly to require discussion that the place at which claimant kept the beer and whisky here condemned falls literally within the terms of the description of an unlawful drinking place as defined by the statute from which we have first hereinbefore quoted. Under that statute, if the claimant kept said beer and liquor at such a place, even though exclusively for his own consumption, he would be aiding and abetting in the keeping or maintenance of an unlawful drinking place—using said beer and whisky to that end, though drinking it only himself. One of the purposes of the statute evidently is to discourage social drinking by making it unlawful for men to habitually congregate at one place for the purpose of drinking prohibited liquors, even though each should drink only his own liquor; the statute being inspired no doubt by the fact of common observation that the temptations to intemperance are greater when men habitually resort to one place and drink in company with each other than when each drinks privately, or drinks with friends only at his or their home in ordinary social intercourse, or other place that is not an unlawful drinking place.

Whether as a matter of public policy the statute is a wise or unwise regulation of the liberty of the citizen was a question for the determination of the Legislature, and is not one for our consideration.—*State v. Reid*, 1 Ala. 612, 35 Am. Dec. 44.

We are of opinion, as said, that the agreed statement of facts sustains the finding and judgment of the lower court that the law was being violated in the keeping and use of the liquor and beer here in question. With it the

[Warrick v. The State.]

claimant was aiding and abetting in keeping or maintaining an unlawful drinking place.—Acts Sp. Sess. 1909, pp. 10, 11, § 5. This being the only question before us, the judgment of condemnation is affirmed.

Affirmed.