J. C. VAN PELT, AS SHERIFF, *Appellant,* v. J. G. HILLIARD, *Appellee.*

Opinion filed March 8, 1918.

1. The legislature must be assumed to understand the meaning of words and to have expressed by use of the words employed their intent and where words employed in a statute have a well defined meaning, there is no place for construction as to the meaning of the words, but the Courts must give to such words the popular or generally accepted meaning.

2. Where words used in a statute have no definite meaning or the connection in which they are used is ambiguous, it is the

duty of the Courts to give to such words a meaning, if it can reasonably be done, that will best harmonize with the object of the enactment, and give effect to the legislative intent.

3. The words "club or other association of persons" has no definite or popularly accepted meaning and the courts must ascertain and declare what was the meaning of the words as intended by the Legislature and in doing this must ascertain what was the object of the statute, the law as it existed on the subject and the defect in the existing law and give to such words a meaning that will harmonize with and not defeat the evident purpose of the statute.

4. The policy of the State in the regulation of the sales of intoxicating liquors in non prohibited territory had been to prevent the assesmbling of persons in the open saloon and there drinking intoxicating liquors, wines and beer, but such prohibition did not apply to clubs or other associations of persons and the object of Chapter 7287, Laws of Florida 1917, was to include such clubs and associations. The purpose of this statute Chapter 7287 is to discourage the habit of social drinking, to prevent the assembling of persons at a certain place and there drinking intoxicating liquors, although each should have served to him his own liquors in consideration of pay for such scervice.

5. A person who furnishes such a place and holds himself out to receive, keep and store, and does keep and store large quantities of intoxicating liquors brought there by divers persons exceeding fifty persons in number for the purpose of being served to such persons as they desired, such persons furnishing the glassware, ice, milk, bitters, etc., for the concoction of drinks and serving the said liquors to his patrons who frequently assemble there by day and night and converse together and discuss current topics and events and each have his own liquors served to him by such person in consideration of pay for such service is conducting a club or other association of persons under Chapter 7287 Laws of Florida (1917) and is subject to prosecution as a member, employee or agent of such club or association.

6. The legislative discretion in classifying the subjects of police regulation will not be disturbed by the courts unless it is wholly without a reasonable basis, nor will the Courts because in their opinion other subjects omitted, might have been included, and some included might have been omitted, declare such classification unreasonable.

7. The provisions of Article 3 Section 16 of the Constitution, "no law shall be amended or revised by reference to its title only, but in such case the act as revised, or section as amended, shall be re-enacted and published at length" refers only to laws in express terms amendatory or revisory, and not to laws that only amend by implication.

8. The legislature may in the enactment of a law include the whole or part of the provisions of another statute by a reference to the adopted statute and thus make it a part of the enactment and any amendment or repeal of the adopted statute will not affect the statute containing the reference. Such statutes are known as reference statutes and are not strictly amendatory or revisional and are not violative of Article 3, Section 16, of the Constitution of Florida.

9. "It is a sufficient compliance with Section 16, Article 3, of the Constitution, if the subject is expressed in the title to the act, the matters properly connected with the subject not being required to be expressed in the title." (State ex rel. Moodie v. Bryan, 50 Fla. 293).

10. Neither the Constitution nor Article XIX of the Constitution of Florida containing any provision directly or by implication upon the subject of serving or dispensing intoxicating liquors, wines or beer, the legislature has the power to pass any statute upon the subject which it may deem proper for the welfare of the State and may make any reasonable regulation covering the serving or dispensing of intoxicating liquors and Chapter 7287 is not in violation of the Constitution or Article XIX of the Constitution of Florida.

Appeal from Court of Record for Escambia County, C. M. Jones, Judge.

Orders reversed.

## STATEMENT.

On October 9th, 1917, Hilliard filed his bill in chancery in the Court of Record of Escambia County, against J. C. Van Pelt, as Sheriff, alleging that Hilliard was engaged in and carried on the business of a restaurant keeper at No. 222 South Palafox Street, in the City of Pensacola, and in connection with said business received and stored in his place of business beer and liquors, which was the property of Hilliard's customers, serving the same to said customers when they desired; that, scores of Hilliard's customers stored beer and liquors with him to be so served; that, Hilliard had procured all licenses required by the State of Florida to be by him procured, and particularly a license to operate a restaurant wherein intoxicating liquors are served; that, J. C. Van Pelt, as Sheriff, on the 8th day of October, A. D. 1917, entered Hilliard's place of business and seized wrongfully all of the beer and liquors therein stored for Hilliard's customers, which beer and liquors was alleged to be the property of Hilliard's customers, and intrusted to him to be served to them, and to the possession of which Hilliard was entitled as against any person, except the owner thereof; that, Hilliard had built up a profitable business and the seizure of said liquors by the Sheriff was without authority of law, and if the Sheriff was not enjoined from further unlawful seizures, Hilliard's business would be destroyed, and his customers would refuse to intrust their liquors to him

for storage; and that, the Sheriff had openly stated he intended to seize all liquors which might be sent to Hilliard's place of business by his customers.

Hilliard prayed a temporary injunction restraining the Sheriff from future seizures and interferences, and that such temporary injunction be made perpetual on final hearing, and for a mandatory injunction requiring the Sheriff to return the liquors seized on October 8th.

On October 11th, 1917, the Sheriff filed his answer to the bill, with grounds of demurrer incorporated therein, in which he admitted the seizure of the liquors as alleged in Hilliard's bill, and further alleged that, at that time, Hilliard was arrested and taken into the custody of the Sheriff for the violation of the provisions of Chapter 7287, Acts of 1917, Laws of Florida, because Hilliard did keep, conduct and operate a club and, as such, served and dispensed liquors between the hours of six o'clock P. M. and seven o'clock A. M., and in less quantities than one-half pint and not in securely sealed receptacles, and permitted such liquors to be consumed on his premises, and because he served and dispensed liquors on premises where meals were served, etc.; and, in his answer, the Sheriff admitted it was his intention to thereafter seize liquors which Hilliard might have on his premises, brought there in the manner and for the purpose for which the seized liquors had been brought there; and, in his answer, the Sheriff alleges that, at the time and place alleged, Hilliard held himself out to receive, store and serve liquors to all persons who might bring liquors to his place of business and pay his charge therefor, and that Hilliard had provided premises for that purpose and did receive, store and serve liquors to a large number of persons exceeding fifty (50) in num-

ber, and that such persons did, from time to time thereafter, resort to Hilliard's premises and have such liquors served to them by Hilliard; and that, Hilliard provided the necessary glassware and other incidentals necessary to make said liquors palatable and for the concoction of mixed drinks, etc.; and that, by day and by night, large numbers of persons who had stored liquors with Hilliard on his premises resorted to his place of business where Hilliard served them liquors under their directions, which persons, so congregated, met in social intercourse, etc.

On October 20, 1917, this cause was set down for hearing on bill and answer.

On October 23rd, 1917, the Court made and entered its decree granting a temporary injunction, restraining and enjoining the Sheriff from thereafter seizing liquors in Hilliard's place of business and interfering with Hilliard in serving such liquors.

On October 29th, 1917, the Sheriff entered his appeal from the decree of the court granting the temporary injunction as prayed.

The appellant assigns as errors in the court below the following:

"1. The Court erred in entering said decree, enjoining and restraining the defendant J. C. Van Pelt, as Sheriff of Escambia County, Florida, as he is therein enjoined and restrained.

"2. The Court erred in holding and deciding that the complainant was entitled to any decree 'whatsoever against the defendant."

*John P. Stokes* and *Clarence J. Stokes*, for Appellant;

*Kirke Monroe* and *Robert H. Anderson*, for Appellee.

WILLS, Circuit Judge, (*after stating the facts.*)
Where a word used in a statute has a definite meaning
and the sense in which it is used is clear the courts
must give to such word its popular meaning as the
Legislature is assumed to have said what they intended
by the use of such word and there is nothing for the
courts to construe. But, if a word has no definite or
generally accepted popular meaning or in the connec-
tion in which it is used is ambiguous then the court
must construe such word and give to it such meaning
as is reasonable and will carry out the Legislative intent.

"The Legislature must be understood to mean what
it has plainly expressed and this excludes construction.
The Legislative intent being plainly expressed, so that
the act read by itself or in connection with other
statutes pertaining to the same subject is clear, certain
and unambiguous, the courts have only the simple and
obvious duty to enforce the law according to its terms.
Cases cannot be included or excluded merely because
there is intrinsically no reason against it. Even where
a court is convinced that the Legislature really meant
and intended something not expressed in the phrase-
ology of the act, it will not deem itself authorized to
depart from the plain meaning of the language which
is free from amibgity. If a Legislative enactment vio-
lates no constitutional provision or principle it must be
deemed its own sufficient and conclusive evidence of the
justice, propriety and policy of its passage. Courts
have then no power to set it aside or evade its operation
by forced and unreasonable construction. If it has
been passed improvidently the responsibility is with the
Legislature and not the courts. Whether the law be
expressed in general or limited terms, the Legislature

should be held to mean what they have plainly expressed, and consequently no room is left for construction, but if from a view of the whole law, or from other laws *in pari materia* the evident intent is different from the literal import of the terms employed to express it in a particular part of the law, that intent should prevail, for that, in fact is the will of the Legislature." 2 Sutherland's Statutory Construction, Sec. 366, p. 701. See Fine v. Moran, 74 Fla. 417, 77 South. Rep. 533.

"The sole authority of the Legislature to make laws is the foundation of the principle that Courts of Justice are bound to give effect to its intention. When that is plain and palpable they must follow it implicitly. The rules of construction with which the books abound apply only where the words used are of doubtful import; they are only so many lights to assist the courts in arriving with more accuracy at the true interpretation of the intention. This is true whether the statute be public or private, general or special, remedial or penal. These rules are a part of the law equally with the statutes themselves and not much less important. The function of such interpretation unrestricted by settled rules would introduce great uncertainty, and would involve a power virtually legislative. When a doubt arises upon the construction of the words it is the duty of the court to remove the doubt by deciding it; and when the court has given its decision the point can no longer be considered doubtful." Sutherland Statutory Construction, Sec. 363.

The contention of the appellant is that the acts and doings of the appellee are violative of Chapter 7287, Acts of 1917, Laws of Florida, which Act prohibits any member, employee or agent of any "Club or other asso-

ciation of persons whether incorporated or not incorporated" from selling, serving or otherwise dispensing intoxicating liquors, wines or beer except under Chapter 6860, Acts of 1915.

This contention necessarily involves a construction in Chapter 7287, Acts of 1917, of the words "Club or other association of persons."

"The word 'Club' has no very definite meaning. Clubs are formed for all sorts of purposes and there is no uniformity in their constitutions." Commonwealth v. Pomphret, 137 Mass. 564, text 567.

Black's Law Dictionary defines the word "Club" as, "A voluntary association of persons for purposes of a social, literary or political nature, or the like."

A Club is not a partnership. Flemyng v. Hector, 2 Meeson & W. 172.

"The term 'association' is a word of vague meaning used to indicate a collection of persons who have joined together for a certain object." People v. Brander, 244 Ill. 26, 91 N. E. Rep. 59, 135 Am. St. Rep. 301.

"There are various kinds of clubs. An unincorporated members club is a society of persons each of whom contributes to the fund out of which the expenses of conducting the society are paid. An unincorporated proprietary club is one whose property and funds belong to a proprietor who usually conducts it with a view to profit. The members in consideration of the payment of an entrance fee and subscriptions are entitled to make such use of the premises and property and to exercise such other rights and privileges as the contract between them and the proprietor justified.

"A proprietary club may be conducted by either an

individual, a partnership, a voluntary association or a corporation." Corpus Juris. Vol. II, p. 922.

We have failed to find, nor have counsel for either party furnished us with an authority which gives to the word "Club" a popular and definite meaning. Therefore the duty devolves upon this court to give the word a meaning that will harmonize with and effectuate the Legislative intent.

"The cardinal rule for the guidance of courts is to find the Legislative intention; in ascertaining the intention they must not only consider the occasion and necessity for the law's enactment, but also have reference to the object intended to be accomplished. · Courts will never if avoidable adopt a construction of a statute which will lead to an absurdity or make it ineffective." 36 Cyc. 1110; Black's Interpretation of Law, 132 and 461; 37 Ann. Cas. 1138.

"To arrive at the real meaning, it is always necessary to take a broad general view of the act so as to get an exact conception of its aim, scope and object. It is necessary, according to Lord COKE, to consider: What was the law before the Act was passed? What was the mischief or defect for which the law had not provided? What remedy the Legislature has provided. The reason of the remedy."

Prior to the enactment of Chapter 6516, Laws of Florida, approved June 5th, 1913, the State had recognized and .permitted the open saloon—where persons were allowed to congregate, purchase and consume on the premises where bought intoxicating liquors—settees, chairs, tables, musical vaudeville and other attractions were allowed in such resorts, and restaurants paying a liquor dealers license were permitted to serve liquors at meals.

Under this statute "Persons associating themselves together as a club, whether incorporated or not incorporated," by the payment of a tax were permitted to serve and distribute intoxicating liquors, wines and beers to members and non-resident guests but such distribution or serivce of liquor under the statute was declared not to be deemed sales. This class dispensing liquors were not affected by Chapter 6516, Laws of Florida, such disposition of liquors by them being declared by law not to be deemed a sale; but the former class liquor dealers were included in such act and in their places all chairs, settees, tables and attractions were prohibited and no loitering allowed on such premises, but persons were permitted to purchase and consume liquor in such places.

Such was the policy of the State in the regulation of the liquor business in a non-prohibited territory until the enactment of Chapter 6860, Laws of Florida, Approved May 5, 1915, "An Act to regulate the sale or furnishing of intoxicating liquors, wines or beer, and prescribing a punishment for violations of certain of its provisions and repealing laws in conflict herewith." By this act the liquor dealers were not permitted to sell intoxicating liquors in less quantity than one-half pint in securely sealed receptacles, and no such liquors were permitted to be drunk on the premises where purchased. This act repealed all laws in conflict and especially Chapter 6516, but did not interfere with the serving or dispensing of liquors by clubs and persons associating themselves together as a club as this was declared by Section 32 Chapter 6421 Laws of Florida, Approved June 5, 1913, not to be deemed a sale.

The object of these laws was evidently to break up the frequent assembling of persons at one place and

indulging in social drinking; and, while by the enact-
ment of Chapter 6860 the social drinking in the saloon
had been abolished, it was still permitted to be indulged
in by members of clubs in the club room, and the object
of such enactment has thus far failed.

The Legislature doubtless realizing this defect in the
law, enacted Chapter 7287, Acts of 1917, entitled "An
Act relating to the sale, service or disposing of intoxi-
cating liquors, wines or beer by clubs or other associa-
tions of persons whether incorporated or not incorpor-
ated," whereby "no club or other association of persons
whether incorporated or not  *   *   *   should sell, serve
or otherwise dispense intoxicating liquors, wines or
beer."

In the language of the Court of Appeals of Alabama,
Wallace 5. State, 8 Ala. App. 386, 62 South. Rep. 365,
"One of the purposes of the statute is stated to evi-
dently be to discourage social drinking by making it
unlawful for men to habitually congregate at one place
for the purpose of drinking prohibited liquors even
though each should drink only his own liquor."

In our opinion the end sought to be accomplished by
Chapter 6860, of 1915, and Chapter 7287 of 1917, is to
prohibit persons assembling together at one place and
having intoxicating liquors served to them though each
one is served only with his own liquor.  If a person who
furnishes a place and holds himself out to receive, keep
and store, and did receive, keep and store large quan-
tities of intoxicating liquors brought there by divers
persons exceeding fifty persons in number for the pur-
pose of being served to such persons as they desired,
such person furnishing the glassware, ice, bitters, milk,
etc., for the concoction of drinks and serving the said

liquors to his patrons who frequently assembled there by day and night and conversed together and discussed current topics and events and each have his own liquor served to him by such person in consideration of pay for such service, is he conducting a club within the meaning of Chapter 7287, and is he a member, agent or employee of such club? In order to answer this, we must first determine whether or not such acts and doings of appellee and his patrons constitute a "club or other association of persons" within the meaning of Chapter 7287.

The court said, in Curry v. Lehman, 55 Fla. 847, 47 South. Rep. 18, "Intent is the spirit which gives life to a Legislative enactment." The intent is the vital part, the essence of the law, and the primary rule of construction is to ascertain and give effect to that intent. Undoubtedly the general rule of statutory construction is that the intent of the lawmakers is to be found in the language that has been used; and the court has no function of Legislating but simply seeks to ascertain the will of the Legislature. If, however, from a view of the whole law, or from other laws *in pari materia,* the evident intention is different from the literal import of the terms employed to express it in a particular part of the law, the intention should prevail, for that, in fact, is the will of the Legislature. The evil to be corrected, the language of the act including its title, the history of the enactment and the state of law already in existence bearing on the subject are properly considered by the court in arriving at the Legislative intention because the Legislature must have resorted to the same means to arrive at its purpose." "The language used in a statute shall be construed as an entirety and with reference to the purpose of the law as shown by all the enact-

ments on the subject and the meaning of words is ascertained by the connection in which they are used and the evident intent disclosed by all the provisions on the same subject.

"Particular words or provisions shall be construed with the general purpose designed to be accomplished." Peninsular Industrial Ins. Co. v. State, 61 Fla. 376, 55 South. Rep. 398.

"The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the Legislature had in view." Endlich on Interpretation of Statutes, Sec. 73.

The evident purpose of the statute under consideration was to remedy defects under Chapter 6860, each of these statutes being designed to discourage social drinking in public places as was said by the Court of Appeals of Alabama in Wallace v. State, *supra.*

"One of the purposes of the statute evidently is to discourage social drinking by making it unlawful for men to habitually congregate at one place for the purpose of drinking prohibited liquors, even though each should drink only his own liquor;" the statute being inspired no doubt by the fact of common observation that the temptations to intemperance are greater when men habitually resort to one place and drink in company with each other than when each drinks privately or drinks with friends only at his or their home in ordinary social intercourse, or other place that is not an unlawful drinking place."

The statutes provides, no "club or other association of persons;" the special word "club" being followed by general words, the rule of construction known as *ejusdem generis* should be applied.

"But the rule of *ejusdem generis* where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus.

The words "other" or "any other" following the enumeration of particular classes are to be read "as other such like" and include only others of like kind or character." 36 Cyc. 1119.

Under Section 32, Chapter 6421, Acts of 1913, under heading "Clubs selling liquors to members and non-residents" we find, "Persons associating themselves together *as* a club" were not deemed liquor dealers and were not prohibited by Chapter 6860, Acts of 1915. The word "as" is defined in Webster's Dictionary as "like," "similar to," "of the same kind," "in the same manner," "in the manner in which."

The Legislature is assumed to have known what the law was when Chapter 7287 was enacted, and that persons associating themselves together as a club were not prohibited by Chapter 6860, Acts of 1915, from dispensing liquors, and the intention being not only to prevent the drinking of liquors in saloons, as was done by Chapter 6860 of 1915, but in clubs and all similar institutions. We think that where persons in large numbers deposit with a proprietor of a restaurant their individual liquor and such proprietor holds himself out as ready to receive such liquor and dispense it to such patrons for pay for such service, furnishing glassware, ice, milk, etc., for making such liquors palatable, and such persons fre-

quently by day and night resort to such place, engage in discussing current events, politics, etc., and have intoxicating liquors served to them, though each person is served only with his own liquor, is a club or other association of persons within the meaning of Chapter 7287, Acts of 1917.

The courts will not pass upon the constitutionality of a statute except where it is clearly unconstitutional on its face, unless the question is specifically called to their attention.

The constitutionality of Chapter 7287 is not assailed in the present case, but was in the case of Pensacola Lodge No. 497, Benevolent & Protective Order of Elks v. State, argued at the same time, and in view of this fact and the conclusion we have reached, we will decide as to the constitutionality of the statute upon the grounds on which it has been assailed.

The first ground of attack is that the statute applies to "clubs and association of persons" and not individuals, and this is an unjust and arbitrary classification of persons and is unconstitutional. "The legislature has a wide discretion in classifying the subjects of police regulation, and a legislative classification will not be annulled by the courts unless it is wholly without a reasonable or practical basis." Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 South. Rep. 282.

"When there is a reasonable and practical ground of classification for legislative regulations under the police power, the classification should be sustained even though some other classification or the absence of specific classification would appear to some minds to be more in accord with the general welfare, since the discretion of selecting the subjects of police regulation and

the nature and extent of such regulations must be left to the general law making power where there is no undoubted and irreconcilable conflict between the regulations and the provisions and principles of organic law. Davis v. Florida Power Co., 64 Fla. 246, 60 South. Rep. 759.

When we consider the object as we have stated it,— to prohibit the assembly of persons in public places and indulging in social drinking, in which places men drink to greater excess than in their homes,—we see a reason for the classification, and do not think the statute in this respect violates the constitution.

The next attack is that the statute is unconstitutional because it amends a prior law without publishing it at full length pursuant to Section 16, Article III of the Constitution.

This contention is based upon the theory that because the statute provides that no club or other association "shall sell, serve or otherwise dispose of intoxicating wines, liquors or beer unless same be done in such manner and under such regulations as provided for and in full compliance with the provisions of an Act of the Legislature of Florida, approved May 5, 1915, and entitled 'An Act to regulate the sale or furnishing of intoxicating liquors, wines or beer,'" &c.

This statute "belongs to a distinctive class of statutes known or termed as reference statutes not of infrequent enactment. Constitutional limitation not forbidding statutes which refer to and by the reference wholly or partially adopt pre-existing statutes."

In the construction of such statutes the statute referred to is treated and considered as if it were incorporated into and formed part of that which makes the

reference. Turney v. Wilson, 36 Ill. 385; Sedgwick's Stat. & Const, Law, p. 229; Sutherland's Statutory Construction, Secs. 147-257; Knapp v. City of Brooklyn, 97 N. Y. 520. The two statutes exist as separate, distinct legislative enactments, each having its appointed sphere of action; and the alteration, change or repeal of the one does not operate upon or affect the other." Sika v. Chicago & N. W. Ry. Co., 21 Wis. 370; Sutherland's Stat. Const. Secs. 147-257.

Judge COOLEY, in People v. Mahaney, 13 Mich. 481, speaking of a similar provision, said: "This constitutional provision must receive a reasonable construction with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the law. An amendatory act which purported only to insert certain words, or to substitute one phrase for another, in an act or section which was only referred to, but not republished, was well calculated to mislead the careless as to its effect and was perhaps sometimes drawn for that express purpose. Endless confusion was thus introduced into the law and the constitution wisely prohibits such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and can not be held to be prohibited without violating its plain intent."

"It was never intended by the constitution that every law which would affect some previous statute of varied provisions on the same subject should set out the statute, or statutes, so affected at full length. If this

were so, it would be impossible to legislate." Ex parte Pollard, 40 Ala. 77, text 98.

The constitutional provision forbidding the amend·ment or revision of a law by reference to its title only and requiring the act as revised, or section as amended, to be re-enacted and published at length does not apply to amendments or repeals of statutes that are affected by implication, but applies only to laws that assume in terms to revise, alter or amend some particular prior act or section of an act. City of St. Petersburg v. English, 54 Fla. 585, 45 South. Rep. 483.

The next contention is that "The title is not broad enough." "The general purposes of the provisions is accomplished when a law has but one general object which is fairly indicated by its title." Cooley's Consti-ttuional Limitations, 205.

"It is a sufficient compliance with Section 16, Article III of the Constitution if the subject is expressed in the title to the act, the matters properly connected with the subject not being required to be expressed in the title." State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 929.

"If the title to the act fairly gives notice of the subject of the act so as to reasonably lead to an inquiry into the body of the bill, it is all that is necessary. The title need not be an index to the contents of the bill." State ex rel. Moodie v. Bryan, supra.

Again the statute is assailed upon the ground that the provisions of Chapter 7287 are wholly without the power of the Legislature to enact, and lastly that Chapter 6860 of the Laws of Florida entitled "An Act to regulate the sale or furnishing of intoxicating liquors, wines or beer and prescribing a penalty for the viola·

tion of certain of its provisions and repealing laws in conflict herewith" is unconstitutional and void, in violation of Sections 1 and 12 Declaration of Rights, in violation of Section 16 of Article III of the Constitution and of Article XIX Constitution of Florida. We shall discuss these grounds together.

This court in Ex parte Pricha, 70 Fla. 265, 70 South Rep. 406, said in the majority opinion: "Where the sale of intoxicating liquors is permitted or authorized in a county it is still subject to such regulations under the police power as the Legislature may prescribe," and decided that Chapter 6860 was not violative of the Declaration of Rights or of Section 16, Article III or Article XIX of the Constitution. It is true in the case of Ex parte Pricha, *supra,* Justices TAYLOR and ELLIS dissented for the reasons that said act under the guise of police power prohibited the sale of liquor and was violative in this respect of Article XIX and that the 7th section of the Act was void because "in so far it may be construed as an attempt to prevent the giving of intoxicating liquors away" was not covered by the title of the act. In the above cited case the party was engaged in the sale of liquors and therefore had an interest in the sale and could be heard to complain, but in the case before us the appellee is admitted not to sell or give away intoxicating liquors, we fail to see how he could be benefited even by the dissenting opinions.

"Nor will a court listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has therefore no interest in defeating it. On this ground it has been held that the objection that a legislative act was unconstitutional,

because divesting the rights of remaindermen against their will, could not be successfully urged by the owner of the particular estate, and could only be made on behalf of the remainder-men themselves. And a party who has assented to his property being taken under a statute can not afterwards object that the statute is in violation of a provision in the constitution designed for the protection of private property. The statute is assumed to be valid, until someone complains whose rights it invades. *'Prima facie,* and upon the face of the act itself, nothing will generally appear to show that the act is not valid; and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void, as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained. Respect for the legislature, therefore, concurs with well-established principles of law in conclusion that such an act is not void, but voidable only; and it follows, as a necessary legal inference from this position, that this ground of avoidance can be taken advantage of by those only who have a right to question the validity of the act, and not by strangers. To this extent only it is necessary to go, in order to secure and protect the rights of all persons against the unwarranted exercise of legislative power, and to this extent only, therefore, are courts of justice called on to interpose." Cooley's Cnst. Lim. (7th ed.) p. 232.

We do not consider that the writers of the dissenting opinions intended to or did question the police power of the State over the control of the liquor except in the sale of intoxicating liquors, wines and beer.

Our constitution contains no provision directly or by

implication upon the "serving or dispensing intoxicating liquors by one not engaged in the sale of the same."

The legislature when unrestrained by the organic law either directly or by necessary implication has the power to pass any statute which it may deem proper for the welfare of the State, and may make any reasonable regulation as to the conduct of any business or occupation. As was said in Tragessor v. Gray, 73 Md. 250, 20 Atl. Rep. 905, 9 L. R. A. 780, text 785. "But in truth the valid exercise of the police power does not depend on any question of discrimination for or against particular persons or classes of persons. It is confided to the wisdom of the legislature to make such application of it as the public welfare may require. In the case of occupations which may become injurious to the community, they may prohibit them altogether; or they may permit them only in certain localities, and on certain terms and under certain restrictions; or they may grant the privilege of pursuing them to some persons and deny it to others. Individual interests are not at all considered in the exercise of this power. They must yield when they are in opposition to the public good. And the legislature is to determine what measure will best promote the public good in dealing with these matters."

The orders appealed from should be reversed, and the cause remanded with directions to dissolve the injunction and dismiss the bill.

It is but right to the Justices of this court to say that the decision in this cause has been delayed by the sickness of the writer who was designated to prepare the opinion.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.

WEST, J., disqualified.