LEHAN, Judge.
Dolores Trapani, daughter of George Ga-gliardi, deceased, appeals trial court orders allowing certain claims of the decedent’s widow, Carmela Gagliardi, against the decedent’s property despite a prenuptial agreement providing to the contrary. We reverse.
Carmela and George were married in 1984. The marriage was the second for both who were in their eighties. Each had grown children by a prior marriage. Several days before their marriage, they had a discussion concerning their finances. George’s son-in-law, Bruno Trapani, was a witness to that discussion. Bruno testified that Carmela and George talked about the future disposition of their property. The effect of his testimony was that they said that each party’s assets would go to his or her respective children.
The next day Carmela and George met with an attorney. According to the attorney’s testimony, Carmela and George agreed that neither would claim assets of the other and asked that he draw up an agreement along those lines as soon as possible. He told them he could not draft such a document immediately and that they would have to return later.
Five days after their marriage, Carmela and George returned to the attorney’s office to sign thé written agreement. The written agreement which they signed provided that “each party releases all claims or demands in the property or estate of the other.” There was also a provision that Carmela would have the right to live in George’s house for six months after George’s death.
George died about ten months after the marriage. Carmela filed a petition for appointment of a curator alleging that she *958 had been coerced into signing the written agreement, that there had been no disclosure of assets by either party, and that the agreement was invalid pursuant to section 732.702, Florida Statutes (1985). Section 732.702 provides in subsection (1) that certain rights of a surviving spouse “may be waived ... before or after marriage, by a written contract, agreement, or waiver, signed by the waiving party” and in subsection (2) that
Each spouse shall make a fair disclosure to the other of his or her estate if the agreement, contract, or waiver is executed after marriage. No disclosure shall be required for an agreement, contract, or waiver executed before marriage.
Carmela also filed petitions for a family allowance, to determine homestead, and to determine exempt property.
In opposition to Carmela’s petitions, Dolores argued that the written agreement between George and Carmela constituted a subsequent confirming memorandum relating back in time to the premarital oral agreement and thus satisfied the requisites of section 732.702 without there having been a disclosure of assets. Dolores cited Flagship National Bank of Miami v. King, 418 So.2d 275 (Fla. 3d DCA 1982), in support of her argument. King held that such “an agreement ... actually reached— without disclosure [of assets] — before the parties marry [is enforceable] if it is reduced to writing at any stage, either before or after the marriage takes place.” 418 So.2d at 278. We agree with the holding and rationale of King.
The trial court considered and was justified in considering there to have been a premarital agreement consistent with the testimony of Bruno and the attorney. Carmela in the trial court and on appeal has not disputed that testimony. Part of her testimony was that “I make a deal with him, when he die my property is mine and his property is his, but as soon as I marry him, I be the wife.” The first part of that testimony was obviously entirely consistent with Bruno’s testimony. The second part (“but as soon as I marry him, I be the wife”) is not determinative. There was no testimony contrary to the testimony of Bruno and the attorney. In fact, Carmela also testified, “We got together. His property go to his children, mine to mine.” But the trial court concluded that King did not apply for the reason, which we discuss further below, that the written agreement in this case varied substantially from the prior oral agreement and, therefore, was not a confirming memorandum. The court concluded that the written agreement was not enforceable because section 732.702 requires in connection with an agreement of this type entered into after marriage a disclosure of assets, which apparently had not occurred. Accordingly, the court granted Carmela’s claims for homestead and exempt property. The court denied her claim for family allowance because it found that she had sufficient assets of her own and was self-supporting.
On appeal the issue is whether the post-nuptial written agreement constituted, in the words of King, a “sufficient subsequent memorandum of the original oral undertaking.” 418 So.2d at 278. We conclude that it did. In fact, the terms of the written agreement itself, by reciting that “the parties plan to marry each other,” indicate that the agreement was premarital.
The variance which the trial court found to exist between the written agreement and the prior oral agreement concerned the provision in the written agreement as to Carmela’s remaining in George’s residence for six months after his death. For the following reasons we disagree that such a variance prevented the written agreement from being a sufficient subsequent memorandum. There is no evidence that the oral agreement contained any provision concerning Carmela remaining in George’s house after his death. Thus, Carmela appears to have received a greater benefit under the written agreement than she had under the oral agreement. Also, the sub *959 stance of both the oral and written agreements was that each party would have no right to the estate of the other. That there was a proviso in the written agreement giving Carmela six months to .live in George’s house does not change that substance. Indeed, the proviso appears to have recognized, and thereby confirmed, the oral agreement that Carmela would otherwise have had no right to the house upon George’s death.
Carmela does not assert any other material variance between the two agreements.[1] Her contention that the written agreement incorrectly states that she had consulted with her own attorney does not concern what they agreed to. Her own deposition testimony shows that she understood the terms of the written agreement and was not coerced into signing it.
Because the written agreement was a memorandum confirming the prenuptial oral agreement, there was no requirement of a disclosure of assets at the time of the written agreement. The legislative declarations in section 732.702 that no asset disclosure is necessary in connection with such an agreement entered into before marriage and that the agreement be in writing were fulfilled. The agreement is enforceable.
Contrary to an argument of Carmela, we do not conclude that Evered v. Edsell, 464 So.2d 1197 (Fla.1985), or Stregack v. Moldofsky, 474 So.2d 206 (Fla.1985), affect the validity of King. Neither of those cases involved the type of fact situation in King and here. Nor do we agree with Carmela’s argument that under In re Estate of Skuro, 487 So.2d 1065 (Fla.1986), homestead claims could not be waived as we have concluded they were here. Section 732.-702(1) specifically authorizes a waiver of homestead rights pursuant to language like that which is quoted above from the written agreement, and, in any event, the written agreement contained a specific waiver of homestead rights.
Reversed and remanded for proceedings consistent herewith.
RYDER, A.C.J., and SANDERLIN, J., concur.

. While the trial court also referred to "other matters,” no other such variance appears.