ALTENBERND, Judge,
concurring specially.
By this panel’s decision, we affirm the trial court’s order denying Mrs. Spangen-berg’s claim as a pretermitted spouse under section 732.301, Florida Statutes (1987). The trial court properly relied upon this court’s controlling decision in Trapani v. Gagliardi, 502 So.2d 957 (Fla. 2d DCA), review denied, 508 So.2d 13 (Fla.1987), and denied Mrs. Spangenberg’s claim because she had entered into an oral prenuptial agreement which was confirmed in writing after her marriage to Mr. Spangenberg. In Trapani, this court held that section 732.702, Florida Statutes (1985), does not require a person to disclose the extent of his or her assets to create a valid written postnuptial agreement if the agreement is simply a written confirmation of an oral prenuptial agreement. Although I recognize that this panel is bound by Trapani, I would analyze this issue differently if this were a case of first impression.
In the spring of 1984, Mr. Spangenberg and Mrs. Spangenberg, whose former name was Darlene M. Fairchild, contemplated marriage. Each had been married previously and each had adult children. Mr. Spangenberg was seventy-four years old that spring.
In their discussions prior to marriage, the couple agreed that they should prepare a prenuptial agreement. Each party was represented by an attorney. The two attorneys prepared two or more draft prenuptial agreements prior to the wedding. It is undisputed, however, that no written contract, agreement, or waiver was signed pri- or to the couple’s marriage. The last draft agreement was prepared by Mrs. Spangen-berg’s attorney during the week preceding the marriage. That proposed agreement included a requirement that Mr. Spangen-berg purchase a $20,000 certificate of deposit for Mrs. Spangenberg. Mr. Spangen-berg did not agree to this provision. At some disputed time, either before or after the marriage, Mrs. Spangenberg agreed to remove this provision from the agreement.
Mr. and Mrs. Spangenberg were married on Sunday, May 27, 1984. On the following Tuesday, Mrs. Spangenberg went to her attorney’s office. He prepared the final written agreement, omitting the requirement for a $20,000 certificate of deposit.[1] Mrs. Spangenberg signed the agreement at her attorney’s office. Mr. Spangenberg signed the agreement on the following day.
Despite the fact that the written agreement was signed after the marriage, the agreement was entitled a “prenuptial agreement.” It was written as if it were entered into before the marriage. Instead of signing the agreement with her new married name, Mrs. Spangenberg signed as “Darlene M. Fairchild.”
Mrs. Spangenberg and her attorney were the only witnesses to testify in the trial court. Her attorney confirmed that draft agreements were prepared before the marriage and that the final agreement was signed after the marriage. His testimony is, at best, ambiguous as to whether the couple reached a final oral agreement prior to the wedding. Mrs. Spangenberg testified that the final oral agreement was not reached until after the marriage.
Mr. Spangenberg died in 1987, approximately three years after the marriage. His will, which had been prepared prior to the marriage, left nothing to Mrs. Spangen-berg. Thus, Mrs. Spangenberg timely filed a claim for her share of the estate as a pretermitted spouse.
The estate defended against Mrs. Span-genberg’s claim by relying upon the agreement and the provisions of section 732.702, Florida Statutes (1987). Section 732.702(1) permits the rights of-a pretermitted spouse to be waived “by a written contract, agreement, or waiver, signed by the waiving party.” Section 732.702(2) provides:
*317 Each spouse shall make a fair disclosure to the other of his* or her estate if the agreement, contract, or waiver is executed after marriage. No disclosure shall be required for an agreement, contract, or waiver executed before marriage.
(Emphasis supplied.)
There is no dispute that Mr. Spangen-berg did not make a fair disclosure of his estate to Mrs. Spangenberg. The agreement does not contain a statement indicating that a fair disclosure had been made by either Mr. or Mrs. Spangenberg. Moreover, there is no evidence from other sources indicating a fair disclosure. Thus, the issue in this case is whether the nuptial agreement can be enforced in the absence of a fair disclosure. This issue, in turn, depends in part upon whether the agreement was “executed” before or after marriage.
In Trapani, we held that such a written agreement is enforceable so long as it is merely a subsequent written memorandum which confirms an original oral contract reached by the parties prior to the marriage. Our decision in Trapani is based primarily upon a similar decision of the Third District in Flagship National Bank of Miami v. King, 418 So.2d 275 (Fla. 3d DCA 1982).
In King, the court construed this statute to achieve a perceived legislative intent. I question the correctness of the perceived legislative intent. The King opinion states that the legislature had two “obvious reasons” for limiting financial disclosure to postmarital agreements: 1) to promote marriage, and 2) because the financial duties and responsibilities of marriage are sufficient in themselves to prevent the parties from entering into an unfair prenuptial agreement. Neither of these reasons appears obvious to me. If anything, the overly optimistic trust which often exists prior to marriage may allow unfairness in nuptial agreements. I also doubt that the legislature intended to promote marriages between people who have not openly and honestly discussed their personal finances pri- or to marriage. Instead, I am inclined to believe that the legislature made this distinction simply because the legal duties owing between unwed parties without marital assets have traditionally been far less than the duties owing between parties bound by marriage.
Whatever the general legislative intent for this statute, I do not believe it explains the legislature’s decision to require “execution” of such agreements before marriage. I am troubled by the Third District’s construction of the statute because it “as-cribefd] no particular significance to the fact that section 732.702(2) refers to agreements ‘executed’ before or after marriage.” King, 418 So.2d at 278 n. 6. I cannot convince myself that the legislature used the word “execute” with no particular significance. The overall statutory provision is designed to require a written agreement. Attorneys, legislators, and laypersons “execute” written agreements. It is certainly unusual to select the word “execute” to describe an agreement which is merely oral. In normal usage, parties “reach” an oral agreement and subsequently "execute” a written agreement. I do not believe that the legislature' wished to dispense with financial disclosure unless the parties actually executed the written agreement prior to the marriage. I can only conclude that the legislature selected the word “execute” in order to create certainty and to avoid those problems which oral agreements frequently create. The word “execute” effectively operates as a statute of frauds. As discussed later in this opinion, there is merit in a rule requiring a written agreement that is signed before marriage.
My personal view concerning the legislature’s reason for using the word “execute” and the Third District’s competing view, however, should be irrelevant as a matter of law. It is well established that “if the intent of the legislature is clear and unmistakable from the language used, it is the court’s duty to give effect to that intent.” Englewood Water Dist. v. Tate, 334 So.2d 626, 628 (Fla. 2d DCA 1976). When the language of the statute is plain and unambiguous, there is no occasion for the courts to resort to any of the rules of statutory construction. Holly v. Auld, 450 So.2d 217 *318 (Fla.1984); Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918). This statute plainly and unambiguously requires the execution of an agreement prior to marriage in order to avoid the statutory requirement of fair disclosure.
I do not question the equity of the rule announced in Trapani and King. It is simply not the rule chosen by the legislature and contained within the statute. The legislature chose a rule which requires a signed written document prior to marriage to avoid a fair disclosure of assets. Although the legislature’s rule may occasionally achieve a harsh result,[2] there is substantial merit in a rule which establishes certainty on this issue. If the legislature’s chosen language were followed by the courts, one could determine whether financial disclosure was required by simply comparing the time of the marriage to the time of the written agreement’s execution. Attorneys and their clients could easily determine the validity of nuptial agreements without conducting expensive investigations, without trials and appeals, and without decisions based on faulty memories and witnesses with direct financial interest in the outcome of the case.
By contrast, the judicial gloss placed upon this statute has created a complicated evidentiary question. The ' trial court' is called upon to determine whether the parties had reached an oral agreement, at what specific point the parties had reached their oral agreement, and if the written agreement is sufficiently comparable to the oral agreement to constitute a subsequent written memorandum. This evidentiary hearing will always take place under conditions in which at least one of the two parties is deceased and, thus, unavailable to testify. In the long run, the legislature’s certain rule is less likely to result in injustice than the more flexible and unpredictable judicial rule. In this case, for example, the trial court did not have the benefit of Mr. Spangenberg’s testimony. Despite the lack of his testimony, the trial court still had evidence before it which could have supported either the enforcement or the rejection of the prenuptial agreement.[3]
While I disagree with the reasoning of Trapani and King, I cannot recommend a judicial change of that case law at this juncture. If the legislature strongly disagreed with the reasoning in King, it could have statutorily overruled the case during the last seven years. .There may be many nuptial agreements which have been prepared in reliance upon these two cases and which could be jeopardized by a literal interpretation of the statute. Thus, if Florida is to return to the certain rule which I believe the legislature initially intended, it is perhaps best for the legislature to implement this change.

. Under the final agreement, any home that the parties owned, or obtained in the future, was to be titled in their joint names with a right of survivorship. Mr. Spangenberg was obligated to irrevocably designate Mrs. Spangenberg as the beneficiary of two life insurance policies and his pension plan. Otherwise, both parties waived their rights to the property and estate of the other.

. The parties in this case seem to assume that Mr. Spangenberg’s failure to disclose the extent of his estate voids the parties’ agreement and permits Mrs. Spangenberg to receive a preter-mitted share of his estate. This may be an incorrect assumption. Under Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla.1962), a valid prenuptial agreement contemplates either a fair and reasonable provision to the disadvantaged spouse, or a full and frank disclosure of assets to the disadvantaged spouse before that spouse signs the agreement. Absent such a disclosure, the disadvantaged spouse’s general and approximate knowledge of the other spouse's property would suffice. Section 732.702(2) eliminates these requirements for valid prenuptial agreements in probate proceedings. Stregack v. Moldofsky, 474 So.2d 206 (Fla.1985). It may be consistent with the Florida Supreme Court’s previous decisions to apply the Del Vecchio requirements to postnuptial agreements in probate proceedings. See Flagship Nat'l Bank of Miami v. King, 418 So.2d 275, 279 n. 8 (Fla. 3d DCA 1982). See generally Casto v. Casto, 508 So.2d 330 (Fla.1987); Weintraub v. Weintraub, 417 So.2d 629 (Fla.1982); Belcher v. Belcher, 271 So.2d 7 (Fla.1972).

. I recognize that should the trial court determine that the agreement is a postnuptial agreement rather than a prenuptial agreement, it may still have to conduct an evidentiary hearing to determine the other issues under Del Vecchio. These issues, however, will probably be decided on more objective factors, such as the parties’ ages, health, education, and financial status. Trial courts already make these determinations in divorce proceedings. Casto. These factors are easily evidenced, even in the absence of the deceased party.