417 So.2d 629 (1982)
I. Irving WEINTRAUB, Petitioner,
v.
Clara L. WEINTRAUB, Respondent.
No. 60524.
Supreme Court of Florida.
April 8, 1982.
Guyte McCord, III, of Spector, Tunnicliff & McCord, Tallahassee, for petitioner.
Huntley Johnson of Cushman & Johnson, Gainesville, for respondent.
BOYD, Justice.
This cause is before the Court on petition for review of a decision of the district court of appeal, which the court certified to have passed upon the following question of great public importance:
Does Section 732.702(2) validate premarital agreements otherwise invalid under Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962), when the agreement is questioned on grounds of non-disclosure in a marriage dissolution or other proceedings affecting property during the lifetimes of the spouses?
Weintraub v. Weintraub, 395 So.2d 302, 303 (Fla. 1st DCA 1981). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
In an action for dissolution of the parties' marriage, the petitioner-husband interposed an antenuptial agreement in bar to the respondent-wife's claim for alimony. The trial court ruled that the agreement was invalid because petitioner did not disclose the extent of his resources before its execution, nor did respondent have knowledge of his resources through other means.
On appeal, the district court upheld the trial court ruling, finding that section 732.702, Florida Statutes (1979), which abolished the disclosure requirement in probate proceedings is not applicable to the dissolution process. We approve the decision of the district court of appeal.
This Court considered the validity of antenuptial agreements in Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962). There it was said that such agreements may be upheld on either one of two grounds. First, if the agreement makes a fair and reasonable provision for the less financially secure party, it is presumptively valid. In the absence of a fair and reasonable provision, the agreement may still be upheld if the less secure party entered into it with an understanding of the rights being waived. Such an understanding can be assumed if the less secure party had knowledge of the assets of the wealthier party. That knowledge *630 may be obtained either directly through a disclosure by the wealthier party, or indirectly, from other sources. Id. at 20.
Del Vecchio established standards for antenuptial agreements in the probate setting, but the same standards were later applied to dissolution hearings in Posner v. Posner, 233 So.2d 381 (Fla. 1970). There the Court noted that while contracts which were intended to encourage or facilitate divorce were illegal as contrary to public policy, an antenuptial agreement negotiated in good faith could encourage marital tranquility. Id. at 382-83. Where the antenuptial agreement met the Del Vecchio standards and the divorce was prosecuted in good faith, the agreement would be upheld. Id. at 385. Thus, as of 1970, antenuptial agreements could be upheld in both probate and dissolution proceedings only when they either met the fairness standard or were entered into knowingly.
The rule as to probate was changed in 1974 when the legislature enacted what is now section 732.702(2), Florida Statutes (1979).[1] That statute makes valid all agreements entered into before marriage, even in the absence of disclosure. The statute is only applicable to probate proceedings[2] and no parallel statute exists pertaining to the validity of antenuptial agreements in dissolution proceedings.
Petitioner asks that we reverse our holding in Posner, and change the common law rule pertaining to dissolution to correspond with the statutory change in the probate code. If we were to so hold, petitioner's agreement would be valid despite the lack of disclosure and would be dispositive of the question of alimony. Petitioner's main argument is centered on public policy grounds and focuses on the disparity first mentioned by the Posner court. Simply stated, if a spouse enters into a disadvantageous agreement without disclosure or knowledge of the other's assets, the discrepancy in the rules could promote divorce. That is, if the marriage is maintained until the death of the wealthier spouse, the antenuptial agreement will be valid in the absence of disclosure under section 732.702(2), and the spouse may possibly receive little or nothing from the estate. If the spouse pursues a divorce, however, the agreement will be invalid because of the lack of disclosure under Posner and the spouse could receive property and alimony in excess of what is provided for in the agreement. The disparity in the rules, it is argued, creates an incentive for divorce. See Posner v. Posner, 233 So.2d at 383.
We find petitioner's argument lacking for several reasons. First, it should be remembered that an agreement that promotes divorce is invalid on public policy grounds. Here, petitioner is asking that the agreement be held valid, and a rule of law invalid on such grounds. We are asked to apply the public policy rule in a convoluted manner.
*631 More importantly, the rule announced in Del Vecchio and given further application in Posner is clearly designed to protect a prospective spouse of modest means from contracting away valuable rights. When the wealthier party is able to conceal assets, the less secure party may relinquish rights unknown to him. As the Del Vecchio decision pointed out, such agreements are not characterized by arm's length dealing, and the parties "must exercise a high degree of good faith and candor." 143 So.2d at 21.
In its revision of the probate code, however, the legislature chose to validate these agreements even in the absence of a disclosure. This can be understood, at least in part, as a result of the difficulty that the estate might encounter in proving disclosure after the death of the wealthy spouse. But no such rationale exists in the dissolution context where both of the competing parties are present to give testimony on the question of disclosure.
If the legislature believes that the discrepancy between the rule as to antenuptial agreements in the probate and dissolution contexts promotes divorce, it may change the laws and eliminate the discrepancy. This Court, however, believes that the Posner decision serves an important function in protecting prospective spouses from being bound by unfair agreements, and that it should therefore not be overruled.
For the above reasons, we answer the certified question in the negative and approve the decision of the district court of appeal.
It is so ordered.
OVERTON, ALDERMAN and McDONALD, JJ., concur.
ADKINS, Acting C.J., dissents.
NOTES
[1] Section 732.702 provides:

(1) The right of election of a surviving spouse, the rights of the surviving spouse as intestate successor or as a pretermitted spouse, and the rights of the surviving spouse to homestead, exempt property, and family allowance, or any of them, may be waived, wholly or partly, before or after marriage, by a written contract, agreement, or waiver, signed by the waiving party. Unless it provides to the contrary, a waiver of "all rights," or equivalent language, in the property or estate of a present or prospective spouse, or a complete property settlement entered into after, or in anticipation of, separation, dissolution of marriage, or divorce, is a waiver of all rights to elective share, intestate share, pretermitted share, homestead property, exempt property, and family allowance by each spouse in the property of the other and a renunciation by each of all benefits that would otherwise pass to either from the other by intestate succession or by the provisions of any will executed before the waiver or property settlement.
(2) Each spouse shall make a fair disclosure to the other of his or her estate if the agreement, contract, or waiver is executed after marriage. No disclosure shall be required for an agreement, contract, or waiver executed before marriage.
(3) No consideration other than the execution of the agreement, contract, or waiver shall be necessary to its validity, whether executed before or after marriage.
[2] Section 732.702 is found in Part VII of the Florida Probate Code, entitled "Contractual Arrangements Relating to Death."