## IN RE: ESTATE OF RALPH JAMES EDSELL, JR., Deceased
### Case No. 82-135 CP 12
Sixteenth Judicial Circuit, Monroe County
January 17, 1983

W. Peter Burns, Steel Hector & Davis, for Co-Personal Representatives, Lisa Evered and John C. Edsell.

Joseph F. Jennings, Kimbrell, Hamann, Jennings et al., for decedent's widow, Mary June Edsell.

HELIO GOMEZ, Circuit Judge

THIS MATTER came on for final hearing before the Court on January 3, 1983, on the "Petition to Set Aside and Assign a Share of the Estate to the Pretermitted Spouse", filed by the Decedent's widow, Mary June Edsell.

The wife, in addition to her own testimony, presented the testimony of her sister, Fern Rohrer Barnhard, her brother-in-law, Harold D. Smith, the deposition testimony of her brother, James Rohrer, the testimony (as an adverse witness) of the Co-Personal Representative,

James C. Edsell, and the following exhibits: the Decedent's will; the inventory filed by the Co-Personal Representatives in this Estate; the Pre-Marital Agreement executed by the parties on February 6, 1981; and the will of the Petitioner's father, Perry L. Rohrer. In addition, the Petitioner's tax returns for 1980 and 1981 were marked as exhibits for identification.

## FINDINGS OF FACT

From the testimony and exhibits presented by the Petitioner, and viewing such evidence in the light most favorable to her, the Court finds that the Petitioner and the Decedent, Ralph Edsell, met in 1978, when the Petitioner was a guest at "The Moorings," a resort owned and operated by the Decedent in Islamorada. The Decedent, who had been a lawyer in Long Island, New York, had owned and operated The Moorings since approximately 1975.

A relationship between the Decedent and the Petitioner ensued, and they lived together at The Moorings for about three years prior to their marriage. During this period, the Petitioner helped run the business, and apparently also did some other work, including (in 1981) selling handbags which she had painted. Also, during this period, the Petitioner and the Decedent bought a home in Monson, Maine, for a purchase price of $21,500. The down payment of $5,000 was paid one-half each by the Petitioner and the Decedent, and they took title to the property as joint tenants. They also purchased a lot in Islamorada for $9,000, with each party paying one-half in cash.

In addition to her interest in these properties, the Petitioner's assets as of the date of their marriae on February 7, 1981, including a savings account in Islamorada with an approximate balance of $3,000, a savings account in Monson, Maine, with an approximate balance of $1,000, a 1976 Buick with an approximate value of $1,200, a money market fund with a balance of approximately $3,000, and an interest, as beneficiary, in the "June Drake Fund" created by the will of her father, Perry L. Rohrer (Petitioner's Exhibit 4). As of the date of the marriage, the approximate principal value of this fund was $82,000.

The parties were married on February 7, 1981, in Islamorada. On the day prior to the marriage, Mr. Edsell prepared, and the Petitioner typed and signed, a "Pre-Marital Agreement," a copy of which is attached to the Answer, and a copy of which was admitted into evidence as Petitioner's Exhibit 3. This Agreement specifically provides that "neither party shall have any spouses' claim to the estate of the other."

The marriage in Islamorada was apparently attended by two couples as witnesses. Prior to the signing of the Agreement, these couples had

been invited, the wedding cake had been purchased, and other such arrangements for marriage had been made. Subsequent to the marriage, Mr. and Mrs. Edsell went on a cruise with various members of the wife's family. This cruise was entirely paid for by the wife's mother.

Fern Barnhard testified that she visited the Petitioner and the Decedent in Islamorada in December, 1980, and that the Decedent said (in the Petitioner's presence), that "I have told my children that June can stay at The Moorings all her life." Harold D. Smith testified that he visited The Moorings in the latter part of 1979, and that Ralph told him (not in the Petitioner's presence) that "in the event of his [Ralph's] death we could be assured that June would be well taken care of."

The inventory of the Estate, marked as Petitioner's Exhibit 2, indicates that the Decedent's estate as of 6he date of his death had a value of approximately $140,000, not including the value of The Moorings. John C. Edsell testified that The Moorings has an approximate present value of $500,000.

At the conclusion of the Petitioner's case, the Co-Personal Representatives moved for a judgment of involuntary dismissal. After hearing the arguments of counsel, considering the pleadings filed, and considering the evidence presented by the Petitioner, the Court granted this Motion. This ruling is based on the following conclusions of law:

## CONCLUSIONS OF LAW

1. In the early stages of the trial, the Court discussed with counsel the Court's view that the Motion for Judgment on the Pleadings, filed by the Co-Personal Representatives and previously denied by the Court, should have been granted. This view was based on the fact that the Petitioner's pleadings admitted that the Pre-Marital Agreement had been executed by the parties prior to their marriage. Under section 732.702 of the Florida Probate Code, an agreement so executed is binding without regard to disclosure of assets. The case-law requirement of disclosure, set forth by the Florida Supreme Court in such cases as *Del Vecchio v. Del Vecchio*, 143 So. 2d 17 (Fla. 1961), has been "suppllanted by statute . . .". *Estate of Reed*, 354 So. 2d 864, 866 (Fla. 1978). Therefore, in a *probate* proceeding, the spouse attacking the pre-marital agreement must be "able to show that her signature on such an agreement had been coerced or otherwise improperly obtained or that she was incompetent at the time she signed . . .". *Estate of Roberts*, 388 So. 2d 216, 217 (Fla. 1980. The wife's Reply in this instance does not raise such defenses, but rather relies upon the "unfairness" of the agreement, and "overreaching" on the part of the husband. Such defenses, as a matter of law, are not sufficient to set aside a pre-marital agreement in the contest of a probate proceeding.

The Florida Supreme Court has held that section 732.702 applies solely to probate proceedings, and that dissolution of marriage actions are still governed by the common-law standards announced in *Del Vecchio. See Weintraub v. Weintraub*, 417 So. 2d 629 (Fla. 1982). In addition to the different equities involved in a dissolution of marriage case, the courts have noted that, in a probate action, as opposed to a dissolution action, the husband (being dead) is not able to respond to the wife's allegations. Under such circumstances, it is appropriate to place what may seem to be a heavy burden placed on the wife by the *Roberts* case, and the pleadings here are not sufficient to raise that issue. Therefore, as a matter of law, the wife in this case has failed to plead sufficient facts to require that the agreement be set aside, and the Motion for Judgment on the Pleadings should have been granted.

2. Because, however, the time for rehearing on the Motion had expired, and because the wife's attorney requested the opportunity to present his evidence and witnesses, the trial proceeded with the testimony and other evidence offered by the wife in support of the matters raised by her Reply to the Affirmative Defenses. Having heard the testimony, having considered the documentary evidence admitted, and even viewing such testimony and evidence in the light most favorable to the Petitioner, the Court finds that, even if the standards of such cades as *Lutgert v.Lutgert*, 338 So. 2d 1111 (Fla. 2d DCA 1976) are applicable to this proceeding, the wife has failed to sustain her burden of showing that the facts here fit within the rule announced in *Lutgert*. In *Lutgert* (a dissolution of marriage action), the husband was fabulously wealthy, and the wife a woman of modest means. The husband first mentioned the pre-marital agreement to the wife within twenty-four hours of the wedding, by which time the following had already occurred (338 So. 2d at 1116):

> Passage had been booked for a honeymoon cruise to Europe; rings had been bought; a trousseau had been bought; all invitations to family and friends had been given; all arrangements otherwise had been made; an ultimatum had been delivered by the husband: "No agreement, no wedding"; and, obviously, there arose a sudden stark awareness of the potential immediate loss of a future life of enourmous grandeur.

These facts, the Court held, raised a presumption of overreaching, requiring the husband to come forth "with *some* competent evidence to the contrary." (338 So. 2d at 1116). The husband failed to sustain this burden.

*Lutgert* is clearly factually distinguishable from the instance case. There is simply not the aura of fabulous wealth hanging over the

proceedings here. Rather, in this case both parties were mature adults, with children born of prior marriages, and assets of only relatively modest size. They had lived together for three years, and so were under no delusions about each other's wealth. They were planning a modest wedding, with only four invited guests. As the Petitioner testified on cross-examination, her life before and after the marriage was precisely the same. In short, the overreaching inherent in the unique facts of *Lutgert* is simply not present here.

Therefore, even taking the testimony and documentary evidence in the light most favorable to the wife, and applying the standards set forth in *Lutgert*, the Court finds that the wife has failed to adduce sufficient facts to raise any presumption of overreaching on the part of the husband, and the pre-marital agreement must be held valid and binding on the wife. Therefore, the wife has no claim as pretermitted spouse, or indeed any other claim against the estate of the Decedent.

For the reasons set forth herein, it is ADJUDGED as follows:

1. The "Petition to Set Aside and Assign a Share of the Estate to the Pretermitted Spouse," filed in this action by Mary June Edsell, is dismissed, with prejudice, and the Respondent Co-Personal Representatives shall go hence without day as to such Petition.

2. The court reserves jurisdiction to tax costs, upon appropriate motion.