IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 3, 2004 Session

## IN RE: THE ESTATE OF J. D. DAVIS, DECEASED

**Direct Appeal from the Circuit Court (Probate Division) for Davidson County**
**No. 02P859    Frank G. Clement, Jr., Judge**

---

**No. M2003-02614-COA-R3-CV - Filed September 2, 2004**

---

The probate court awarded summary judgment to Defendants/Appellees upon determining that, under Florida law, the antenuptial agreement entered into by Plaintiff/Appellant and Deceased was valid and enforceable.  On appeal, Plaintiff/Appellant argues that the agreement is  not enforceable as a violation of Tennessee public policy and by reason of duress.  We reverse the award of summary judgment and remand for further proceedings.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Overton Thompson, III, Nashville, Tennessee, for the appellant, Dorothy L. Davis.

Thomas O. Helton and Sheri A. Fox, Chattanooga, Tennessee, for the appellees, J. Douglas Davis and Julie Ann Davis Griffin.

## OPINION

This appeal requires us to construe an antenuptial agreement ("the agreement").  The facts relevant to our disposition of this appeal are undisputed.  Plaintiff/Appellant, Ms. Dorothy L. Davis (Ms. Davis), a resident of Florida, and her late husband, J. D. Davis (Mr. Davis), a domiciliary of Tennessee, met in the spring of 1989 and married in July 1990.  At the time of their marriage, Mr. Davis was 75 years of age and Ms. Davis was 66 years of age.  Both Mr. Davis and Ms. Davis had been married previously, and both had children from their previous marriages.  They were engaged for over a year before marrying, and their wedding date was postponed at least once.  At the time of their marriage, both were in good health and were comfortable financially.  They lived in Nashville, Tennessee, for six months of the year and in Florida for the remaining six months.  Mr. Davis remained domiciled in Tennessee.  Mr. Davis and Ms. Davis executed their antenuptial agreement

at the offices of Mr. Davis' legal counsel in Florida on July 19, 1990, one day before their marriage. The agreement was notarized by a Florida notary.

The agreement executed by Mr. Davis and Ms. Davis provided, *inter alia*:

> 2. WAIVER OF RIGHT OF ELECTION. Each of the parties waives and releases any rights as surviving spouse to elect to take against the other's will, whether heretofore or hereafter made. This provision shall constitute a waiver and release of the right of election in accordance with the requirements of the Estates, Powers and Trusts Law of the State of Florida or of the same or similar law of any other jurisdiction which may be applicable.

> 3. RELEASE OF MARITAL RIGHTS. Each of the parties hereby waives and releases all rights and interest, statutory or otherwise, including by not limited to homestead, dower, spouse's allowance statutory allowance, distribution in intestacy, and right of election to take against the will of each other which they might acquire as the wife, widow, husband, spouse, heir-at-law, next of kin, or distributee of each other, in their property, owned by them at the time of the marriage or acquired by them at any time thereafter.

Mr. Davis died on May 9, 2002, and his Will was admitted to probate in Tennessee on May 15, 2002. In December 2002, Ms. Davis filed petitions for elective share, homestead, exempt property, and a year's support allowance against the estate of Mr. Davis ("the Estate"). The Estate moved for summary judgment, arguing that Ms. Davis was not entitled to elect against Mr. Davis' Will under the antenuptial agreement. In her response, Ms. Davis argued the agreement was invalid and that she was, therefore, entitled to exercise her right to elective share, homestead, exempt property, and a year's support allowance.

The probate court determined that, under Tennessee's choice of law provisions, Florida law applied to the agreement. It further found the agreement to be valid and enforceable under Florida law. The probate court entered summary judgment for the Estate in April 2003, holding that, in light of the antenuptial agreement, Ms. Davis is not a "surviving spouse" within the meaning of section 31-4-101, Tennessee Code Annotated. Ms. Davis appeals.

### *Issues Presented*

Ms. Davis presents the following issues, as we re-state them, for review by this Court:

(1)     Whether the trial court erred by determining the antenuptial agreement is governed by Florida law;

(2)     Whether the trial court erred by awarding summary judgment to the Estate where a genuine issue of material facts exists regarding whether the antenuptial agreement was a product of duress;

(3)     Whether the trial court erred by awarding summary judgment to the Estate when enforcing it violates Tennessee public policy.

### *Standard of Review*

Antenuptial agreements are enforceable as contracts.  Tenn. Code Ann. § 36-3-501(2001). Contract interpretation is a matter of law which we review *de novo,* with no presumption of correctness afforded to the trial court.  *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999); Tenn. R. App. P. 13(d).  We also review an award of summary judgment *de novo*, with no presumption of correctness.  *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

Summary judgment is appropriate only when the moving party can demonstrate that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).  The party moving for summary judgment must affirmatively negate an essential element of the nonmoving party's claim, or conclusively establish an affirmative defense.  *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts.  *Id.*  A mere assertion that the nonmoving party has no evidence does not suffice to entitle the moving party to summary judgment.  *Id.*  In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000).  The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts.  *Id.*  Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists.  *McCarley*, 960 S.W.2d at 588.

### *Analysis*

Absent a contractual choice of law provision, Tennessee courts apply the *lex loci* rule to contract causes of action.  *Solomon v. FloWarr Mgmt.*, 777 S.W.2d 701, 704-05 (Tenn. Ct. App. 1989).  Accordingly, the substantive law of the state in which the contract was executed governs disputes arising from the contract.  *Id.*  An exception to this general rule is often made when the contract is to be performed in another state and the parties envision performance in accordance with that state's laws.  *Id.* at n5.  The primary consideration to be made in determining whether the exception applies is whether the contract was made "in good faith with reference to the law of some other state," or "with [a] view to" the other state.  *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493

S.W.2d 465, 466-67 (Tenn.1973) (quoting *First Am. Nat'l Bank of Nashville v. Automobile Ins. Co.*, 252 F.2d 62 (6th Cir. Tenn.1958)). The intent of the parties in this regard is to be "gathered from the terms of the instruments and all of the attending circumstances." *Id.*

The agreement before us in this case contains no choice of law provision. Thus, absent a reason for exception, the *lex loci* rule applies and this agreement is to be construed under Florida law. Ms. Davis submits, however, that a genuine issue of material fact exists regarding whether the parties intended that the agreement would be construed under Tennessee or Florida law.

Although Mr. Davis remained a domicile of Tennessee and identified Tennessee as his residence in tax returns and in his Will, there is nothing in this record to suggest that Mr. Davis intended that this agreement would be construed under Tennessee law. Mr. Davis entered into the agreement while in Florida; he entered into the agreement with a Florida domiciliary; the agreement was prepared by Florida legal counsel; during the marriage, Mr. Davis resided in Florida for one-half of each year. Additionally, Florida law is the only law specifically referenced in the agreement. Further, there is nothing in the record to suggest Ms. Davis believed the agreement would be construed under Tennessee law at the time she entered into it. Thus, absent some reason for exception, the *lex loci* rule would apply to this agreement, and it would be governed by Florida law.

Ms. Davis submits, however, that this contract is not enforceable because it violates Tennessee public policy. In general, parties are free to contract under binding terms unless contrary to an overriding social policy. *Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 892 (Tenn. 2002). Thus, regardless of the generally applicable *lex loci* rule of contracts, courts will apply Tennessee law under circumstances where applying the law of a sister jurisdiction would contravene a strong public policy of Tennessee. *Bowman v. Price*, 226 S.W. 210, 214 (Tenn. 1920); *Robinson Prop. Group, LP v. Russell*, No. W2000-00331-COA-R3-CV, 2000 WL 33191371, at *3 (Tenn. Ct. App. Nov. 22, 2000) (*no perm. app. filed*). A contract which violates Tennessee public policy will not be enforceable in Tennessee, although it is enforceable in the state in which it was executed. *Martin v. Dealers Transp. Co.*, 342 S.W.2d 245, 249 (Tenn. Ct. App. 1961).

Florida and Tennessee law governing antenuptial agreements differ in at least one important respect. In Tennessee, antenuptial agreements are enforceable as contracts if they have been entered into "freely, knowledgeably and in good faith without exertion of duress or undue influence upon either spouse." Tenn. Code Ann. § 36-3-501(2001); *Bratton v. Bratton*, 136 S.W.3d 595, 599 (Tenn. 2004). Thus, to be valid in Tennessee, an antenuptial agreement requires prior adequate disclosure and the absence of undue influence or overreaching. *Bratton*, 136 S.W.3d at 599. A party seeking to enforce an antenuptial agreement in Tennessee must prove, by a preponderance of the evidence, that the agreement was executed after

> full and fair disclosure of the nature, extent and value of his or her holdings was provided to the spouse seeking to avoid the agreement, or that disclosure was unnecessary because the spouse seeking to avoid the agreement had independent knowledge of the full nature, extent, and value of the proponent spouse's holdings.

*Randolph v. Randolph*, 937 S.W.2d 815, 817 (Tenn. 1996).

Tennessee applies the standard enunciated in *Randolph* in the probate context, as well as in the marriage dissolution context. *See In Re Estate of Miller*, C.A. No. 88-316-II, 1989 WL 19921, at *2 (Tenn. Ct. App. March 8, 1989). In *Estate of Miller*, this Court affirmed the judgment of the probate court setting aside the terms of an antenuptial agreement waiving the spouse's marital rights, including a year's support, exempt property, homestead and a distributive share of the net estate. We held the agreement was invalid where the agreement was not entered into freely, knowledgeably and in good faith after full and fair disclosure. *Id.*

Under Florida law, however, an antenuptial agreement may be held valid in the probate context even when executed under conditions which would render it invalid in a marriage dissolution action. *Weintraub v. Weintraub*, 417 So.2d 629, 630 (Fla. 1982). The Florida Code provides:

> **Waiver of Spousal Rights.**
> (1) The rights of a surviving spouse to an elective share, intestate share, pretermitted share, homestead, exempt property, family allowance, and preference in appointment as personal representative of an intestate estate or any of those rights, may be waived, wholly or partly, before or after marriage, by a written contract, agreement, or waiver, signed by the waiving party in the presence of two subscribing witnesses. The requirement of witnesses shall be applicable only to contracts, agreements, or waivers signed by Florida residents after the effective date of this law. Any contract, agreement, or waiver executed by a nonresident of Florida, either before or after this law takes effect, is valid in this state if valid when executed under the laws of the state or country where it was executed, whether or not he or she is a Florida resident at the time of death. Unless the waiver provides to the contrary, a waiver of "all rights," or equivalent language, in the property or estate of a present or prospective spouse, or a complete property settlement entered into after, or in anticipation of, separation, dissolution of marriage, or divorce, is a waiver of all rights to elective share, intestate share, pretermitted share, homestead, exempt property, family allowance, and preference in appointment as personal representative of an intestate estate, by the waiving party in the property of the other and a renunciation by the waiving party of all benefits that would otherwise pass to the waiving party from the other by intestate succession or by the provisions of any will executed before the written contract, agreement, or waiver.
>
> (2) Each spouse shall make a fair disclosure to the other of that spouse's estate if the agreement, contract, or waiver is executed after marriage. No disclosure shall be required for an agreement, contract, or waiver executed before marriage.
>
> (3) No consideration other than the execution of the agreement, contract, or waiver shall be necessary to its validity, whether executed before or after marriage.

Fla. Stat. Ann. § 732.702(2002). Thus, in the Florida probate context, an antenuptial agreement to waive the right of election is valid even in the absence of full and fair disclosure of the estate. A fair disclosure is required only when such an agreement is executed after marriage.

As we consider whether enforcing the agreement as valid under Florida law would violate Tennessee public policy, we must consider the history of Florida law governing antenuptial agreements. The Supreme Court of Florida addressed the validity of antenuptial agreements in the probate context in *Del Vecchio v. Del Vecchio*, 143 So.2d 17 (Fla. 1962). The *Del Vecchio* court observed:

> The relationship between the parties to an antenuptial agreement is one of mutual trust and confidence. Since they do not deal at arm's length they must exercise a high degree of good faith and candor in all matters bearing upon the contract.

*Del Vecchio*, 143 So.2d at 21. In consideration of this confidential relationship, the court held that, in the probate context:

> A valid antenuptial agreement contemplates a fair and reasonable provision therein for the wife, or, absent such provision, a full and frank disclosure to the wife, before the signing of the agreement, of the husband's worth, or, absent such disclosure, a general and approximate knowledge by her of the prospective husband's property. The term 'approximate' is, for this purpose, held synonymous with 'near', 'close to' or 'approaching'.

> If the provision made by the agreement is not fair and reasonable then it should be made to appear that the wife, when she signed, had some understanding of her rights to be waived by the agreement. In any event she must have signed freely and voluntarily, preferably, but not necessarily a required pre-requisite, upon competent and independent advice.

*Id.* at 20. In *Posner v. Posner*, the Supreme Court of Florida held the *Del Vecchio* standard of fairness of provision or knowledge of the estate was applicable to determine the validity of antenuptial agreements in marriage dissolution actions. *Posner v. Posner*, 233 So.2d 381 (Fla. 1970).

In 1974, however, the Florida legislature enacted current section 732.702(2), changing the *Del Vecchio* rule as it applied to the probate context. *Weintraub*, 417 So.2d 629, 630 (Fla. 1982). Accordingly, under Florida law, an antenuptial agreement is valid in the probate context even absent disclosure or independent knowledge of the estate of the other spouse. *Id.* The Florida statute applies only in the probate context, however, and the *Weintraub* court rejected Appellant's argument that, for public policy reasons, the same rule should apply in marital dissolution actions. *Id.* at 631. The *Weintraub* court observed that the Florida legislature had made a policy determination when it

-6-

revised the *Del Vecchio* rule in the probate context, and that it was within the province of the legislature to revise the rule, if it saw fit, in the dissolution context. *Id.* The court further stated, "[t]his Court, however, believes that the *Posner* decision serves an important function in protecting prospective spouses from being bound by unfair agreements[.]" *Id.*

Unlike the Florida legislature, the Tennessee legislature has made no distinction or exception for antenuptial agreements which ultimately are construed in the probate context. In Tennessee, an antenuptial agreement must be entered into "freely, knowledgeably and in good faith without exertion of duress or undue influence upon either spouse" in order to be valid in any context. Tenn. Code Ann. § 36-3-501(2001). The courts of Tennessee, moreover, have applied the standard with the same rigor in both the probate and dissolution contexts. *See, e.g., In Re Estate of Miller*, C.A. No. 88-316-II, 1989 WL 19921, at *2 (Tenn. Ct. App. March 8, 1989).

In *Bratton v. Bratton*, 136 S.W.2d 595 (Tenn. 2004), the Tennessee Supreme Court recently reiterated the philosophy which guides the courts of this state when considering agreements entered into between spouses. In considering a postnuptial agreement, the *Bratto*n court stated, "[b]ecause of the confidential relationship which exists between husband and wife, postnuptial agreements are [like antenuptial agreements] . . . subjected to close scrutiny by the courts to ensure that they are fair and equitable." *Bratton*, 136 S.W.3d at 601. The court observed that "a fiduciary duty of the highest degree" is imposed in transactions between spouses. *Id.* (quoting 41 C.J.S. *Husband & Wife* § 87 (1991)). The *Bratton* court emphasized:

> While it is lawful and not against public policy for husband and wife to enter into such contracts, yet they are not dealing with each other as strangers at arm's length. The relationship of husband and wife is one of special confidence and trust, requiring the utmost good faith and frankness in their dealings with each other. . . . Transactions of this character are scrutinized by the courts with great care, to the end that no unjust advantage may be obtained by one over the other by means of any oppression, deception, or fraud. Courts of equity will relieve against any unjust advantage procured by any such means, and less evidence is required in such cases to establish the fraud, oppression, or deception than if the parties had been dealing at arm's length as strangers. . . .

*Id.* (quoting *In re Estate of Gab*, 364 N.W.2d 924, 926 (S.D.1985)(quoting *Keith v. Keith*, 37 S.D. 132, 156 N.W. 910, 911 (1916))).

Clearly, in Tennessee, the marriage relationship is regarded as one of utmost confidence. Accordingly, it is the public policy of this state that agreements entered into between spouses or, in the case of antenuptial agreements, prospective spouses, are enforceable only if they are executed in good faith, knowledgeably, and without duress. *Id.*; Tenn. Code Ann. § 36-3-501 (2001). This "highest degree" of fiduciary duty is required in light of the confidential relationship existing between the parties at the time the agreement is made. The fact that a term of the agreement takes

effect after the death of one spouse, rather than upon a dissolution of the marriage, does not change the circumstances existing at the time the agreement was executed by the parties.

Tennessee's requirements for antenuptial agreements have been developed in light of the unique and confidential nature of the marriage relationship. "An engagement to marry creates a confidential relation between the contracting parties and an antenuptial agreement contract entered into after the engagement and during its pendency must be attended by the utmost good faith[.]" *Bratton*, 136 S.W.3d at 601 (quoting *Baker v. Baker*, 142 S.W.2d 737, 745 (Tenn. 1940)). Borrowing the now famous words of Judge Cardozo, the parties to an antenuptial agreement are "coadventures, subject to fiduciary duties akin to those of partners . . . the punctilio of an honor the most sensitive, is then the standard" which we shall apply to their agreements. *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928). The relationship existing at the time the agreement was executed is not altered by the context in which enforcement is sought.

The public policy of this state is found in our constitution, statutes, judicial decisions, and common law. *Alcazar v. Hayes*, 982 S.W.2d 845, 851 (Tenn. 1998). It is primarily within the function of the legislature to determine public policy, although the judiciary may do so in the absence of a constitutional or statutory directive. *Id.* Antenuptial agreements generally are favored by public policy. *Bratton*, 136 S.W.3d 599. However, the public policy of this state, as established by the legislature and enforced by the courts, requires that, in light of the confidential relationship between prospective spouses, antenuptial agreements must be *executed* in utmost good faith, knowledgeably, with full and fair disclosure, and without duress. Unlike the Florida legislature, the Tennessee legislature has not altered the rules governing the execution of antenuptial agreements when enforcement is in the probate context.

At the time he entered into the agreement, Mr. Davis was a domiciliary of Tennessee. He remained a domiciliary of Tennessee, and thus, upon his death, his Will was subject to probate in Tennessee courts. The parties to this action do not dispute that the Davises' antenuptial agreement was entered into by the parties without full and fair disclosure. Further, the Estate does not contend that Ms. Davis had independent knowledge of Mr. Davis' estate when the agreement was executed. Thus, in this case, the Estate seeks to enforce a contractual term which violates Tennessee public policy in a probate proceeding which could occur only in Tennessee.

As a matter of public policy, Tennessee requires full and fair disclosure. This policy has been formed by the legislature and reinforced by the courts of this state. It is a policy developed in light of the unique and confidential nature of the marital relationship, and serves to promote the highest degree of fiduciary duty between spouses. With all due respect to the legislature of Florida, section 732.702 of the Florida code violates a substantially important public policy of the State of Tennessee. Therefore, we decline to apply the *lex loci* rule to this agreement. The agreement will

be construed under Tennessee substantive law. This holding is dispositive of this appeal and the issue of duress is pretermitted.[1]

### *Holding*

In light of the foregoing, we hold the antenuptial agreement executed by Ms. Davis and the late Mr. Davis is unenforceable in Tennessee. Accordingly, we reverse the award of summary judgment to the Estate and remand this action for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellees, J. Douglas Davis and Julie Ann Davis Griffin, Co-Executors, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[1] Although our holding on the issue of public policy makes it unnecessary for us to address the issue of duress, we note that the record and Appellant's brief create confusion regarding the date of the Davises' marriage. This fact would have been important in our consideration of duress. We note, however, that counsel for the Appellees informs the Court: "The Record below reflects some confusion over the date of marriage; however, the marriage license and antenuptial agreement show that the parties were married in 1990." We highly commend Appellees' counsel for their candor and forthrightness to this Court.