# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### May 22, 2007 Session

## ACCREDO HEALTH INCORPORATED, ET AL. V. DAVID PATTERSON

**Direct Appeal from the Chancery Court for Shelby County**
**No. 06-0496-2      Arnold B. Goldin, Chancellor**

---

### No. W2006-02693-COA-R3-CV - Filed August 1, 2007

---

The trial court dismissed this lawsuit upon determining that it lacked personal jurisdiction over Defendant, a Texas resident. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID G. HAYES, SP. J., joined.

Paul Edward Prather, John W. Simmons, and Richard Alex Boals, Memphis, Tennessee, for the appellants, Accredo Health Incorporated and Accredo Health Group, Inc.

Scott Thomas Beall, Memphis, Tennessee, for the appellee, David Patterson.

### OPINION

The facts relevant to our determination of the single issue presented by this appeal, whether the trial court erred by dismissing this lawsuit for lack of personal jurisdiction over Defendant, David Patterson (Mr. Patterson), are undisputed. Plaintiffs Accredo Health Inc. and Accredo Health Group Inc. (collectively, "AHI") are Delaware corporations that maintain their principal place of business in Memphis, Tennessee. Through its subsidiaries, AHI provides medical services and medication for the treatment of blood-clotting disorders to patients throughout the United States. Mr. Patterson is a resident of Texas who was employed by AHI as a community advocate in Texas.

The relationship between the parties began in February 2003, when AHI sent Mr. Patterson a written offer of employment to his home address in Texas. Mr. Patterson signed the offer in Texas and returned it to AHI's recruiting coordinator in Nashville. In March 2003, prior to beginning employment with AHI, Mr. Patterson executed an employment agreement that contained a non-solicitation provision, a covenant against competition, a confidentiality provision, and a choice of

law provision providing that the agreement would be governed by Tennessee law. The choice of law provision sets forth the following in bold font:

> 5.  <u>GOVERNING LAW</u>. EMPLOYEE ACKNOWLEDGES THAT AHI'S PRIMARY OFFICES ARE LOCATED IN TENNESSEE AND THAT EMPLOYEE'S EMPLOYMENT AND THE STOCK OPTION PLAN HAVE SIGNIFICANT CONTACTS WITH TENNESSEE. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF TENNESSEE.

The confidentiality agreement likewise contains a choice of law provision which states in bold font:

> 4. <u>GOVERNING LAW</u>. EMPLOYEE ACKNOWLEDGES THAT EMPLOYEE'S EMPLOYMENT HAS SIGNIFICANT CONTACTS WITH TENNESSEE. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF TENNESSEE.

Mr. Patterson was employed by AHI as a community advocate from March 2003 through August 2005. According to the community advocate job description included in the record, Mr. Patterson's duties included providing information to patients and caregivers; obtaining information from patients and caregivers; interviewing and monitoring patients; providing educational support to patients; acting as a primary contact point and liaison between AHI and its clients; visiting patient homes for assessment and support purposes; coordinating the delivery of services; customer retention and marketing. Mr. Patterson's duties included no supervisory duties or responsibility for "funds, costs or profits." His "internal and external relationships" were limited to "clinical, pharmacy and clearance staffs, caregivers, case managers, payor sources and HTC staff." Additionally, his "organization influence" was "limited to coordinating patients' care and services."

It is undisputed that Mr. Patterson performed all duties in Texas with/for Texas patients/customers. It is also undisputed that Mr. Patterson had daily contact by telephone and or email with the other members of a "care team" located in Tennessee. AHI's care teams include a community advocate, pharmacist, nurse case manager, clearance specialist, and two pharmacy care coordinators. Additionally, Mr. Patterson traveled to Tennessee to attend AHI's annual community advocate training meetings in 2003 and 2004. Mr. Patterson thus spent a total of eight days in Tennessee during his tenure with AHI for the purpose of attending AHI's training meetings. AHI compensated Mr. Patterson by direct deposit from its bank account in Tennessee. It is undisputed that Mr. Patterson's efforts on behalf of AHI resulted in substantial sales to Texas patients/customers.

Mr. Patterson tendered his resignation from AHI in August 2005, effective September 23, 2005. On March 10, 2006, AHI filed a complaint against Mr. Patterson in the Shelby County Chancery Court in Memphis, Tennessee. In its complaint, AHI alleged breach of contract, misappropriation of trade secrets, tortious interference with business relations, breach of duty of

loyalty, and unfair competition. AHI sought actual and punitive damages and an injunction enjoining Mr. Patterson from violating the terms of the employment and confidentiality agreement. AHI also moved for a protective order governing the disclosure and use of protected health information and confidential and proprietary business information in the proceedings. Mr. Patterson moved to dismiss on the grounds that the trial court lacked personal jurisdiction where Mr. Patterson is a Texas resident who lacked the necessary minimum contacts with Tennessee to justify the exercise of long-arm jurisdiction. The trial court granted Mr. Patterson's motion to dismiss in November 2006, finding AHI had "failed to establish that David Patterson ha[d] sufficient minimum contacts with the State of Tennessee such that maintenance of this action does not offend traditional notions of fair play and substantial justice." AHI filed a timely notice of appeal to this Court. We affirm.

### *Standard of Review*

Our review of a trial court's decision to grant a motion to dismiss based on a lack of personal jurisdiction requires an application of Tennessee's long-arm statute as codified at Tenn. Code Ann. § 20-2-214 to the relevant facts. *See Chenault v. Walker*, 36 S.W.3d 45, 51 (Tenn. 2001)(citing *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn.1999)). This presents a question of law which we review *de novo*, with no presumption of correctness afforded to the trial court's determination. *See id.; see also Humphreys v. Selvey,* 154 S.W.3d 544, 549-50 (Tenn. Ct. App. 2004); *In Re Clark*, No. W2005-01687-COA-R3-JV, 2007 WL 152537, at *10 (Tenn. Ct. App. Jan. 22, 2007)(*no perm. app. filed*)(citing, *See Noles v. Mich. Powersports, Inc.*, No. M2005-00420-COA-R9-CV, 2005 WL 2989614, at *2 (Tenn. Ct. App. Nov. 7, 2005)(*no perm. app. filed*))).

### *Analysis*

We first address AHI's assertion that Mr. Patterson's acceptance of the choice of law provisions in the employment and confidentiality agreements constitute consent to personal jurisdiction in Tennessee and/or provide fair warning that he could reasonably anticipate being haled into court in Tennessee where the clauses state that the employment had "significant contact with Tennessee." We disagree with this assertion. In this case, AHI, a multi-million dollar corporation, drafted the employment and confidentiality agreements and sent them to be executed by Mr. Patterson at his home in Texas. Although the provisions certainly provide that the agreements are to be construed in accordance with Tennessee law, they are not forum selection clauses. Rather, the clauses provide a basis for the application of Tennessee law to contracts that, under Tennessee conflict of law rules, otherwise would be governed by Texas law in Tennessee courts. *See In re Estate of Davis*, 184 S.W.3d 231, 234 (Tenn. Ct. App. 2004) (Absent a contractual choice of law provision, Tennessee courts apply the *lex loci* rule to contract causes of action. Accordingly, the substantive law of the state in which the contract was executed governs disputes arising from the contract.)(citations omitted); *Wright v. Rains*, 106 S.W.3d 678, 681 (Tenn. Ct. App. 2003) ("'Tennessee will honor a choice of law clause if the state whose law is chosen bears a reasonable relation to the transaction and absent a violation of the forum state's public policy.'")(quoting *Bright v. Spaghetti Warehouse, Inc.*, No. 03A01-9708-CV-00377, 1998 WL 205757, at *5 (Tenn. Ct. App.

April 29, 1998)(*no perm. app. filed*)). Further, to the extent that the provisions in a written agreement are ambiguous, we must construe them against the drafting party. *E.g., Spiegel v. Thomas, Mann & Smith, P.C.*, 811 S.W.2d 528, 531 (Tenn. 1991). AHI is a sophisticated corporate entity and undisputedly drafted the parties' written agreements. Mr. Patterson, by contrast, was a relatively low-level employee with no supervisory or organizational authority. To the extent to which the asserted provisions are ambiguous, we must construe them against AHI. Mr. Patterson's consent to the choice of law provisions does not amount to consent to personal jurisdiction in Tennessee, and the provisions do not unambiguously provide fair warning that Mr. Patterson should anticipate being haled into a Tennessee court.

We next turn to whether Tennessee may exercise personal jurisdiction in this case under Tennessee's long-arm statute. The statute provides:

> (a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
> (1) The transaction of any business within the state;
> (2) Any tortious act or omission within this state;
> (3) The ownership or possession of any interest in property located within this state;
> (4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;
> (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
> (6) Any basis not inconsistent with the constitution of this state or of the United States;
> (7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.
> (b) "Person," as used herein, includes corporations and all other entities which would be subject to service of process if present in this state.
> (c) Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative.

Tenn. Code Ann. § 20-2-214 (1994). In the present case, AHI asserts Tennessee may exercise personal jurisdiction based on subsection (a)(6). Thus, our inquiry must focus on whether Mr. Patterson had "minimum contacts" with the State of Tennessee such that the exercise of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice'" under *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and its progeny, including *Masada Investment Corp. v. Allen*, 697 S.W.2d 332 (Tenn. 1985).

-4-

In its brief to this Court, AHI devotes several pages to the substance of its allegations against Mr. Patterson. It also asserts that it shipped products valued at approximately $25 million to Texas as a result of Mr. Patterson's work as a community advocate in Texas. As an initial matter, we note that, even assuming AHI's allegations against Mr. Patterson are true, the substance of the allegations are not, without more, determinative of the question of whether personal jurisdiction may be asserted under subsection (a)(6). Additionally, that AHI's revenue from products it shipped to Texas patients/customers was substantial during Mr. Patterson's employment with AHI is not the focus of our inquiry here. Rather, our inquiry focuses on whether Mr. Patterson's contacts with Tennessee constitute "conduct and connection with . . . [Tennessee] such that he should reasonably anticipate being haled into court [here]." *Masada*, 697 S.W.2d at 334 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In *Masada,* the Tennessee Supreme Court noted that, in determining whether a defendant has had minimum contacts with the forum state such that the exercise of personal jurisdiction is consistent with due process, the court must consider three primary factors: 1) the quantity of the contacts; 2) the nature and quality of the contacts; 3) the "source and connection of the cause of action with those contacts." *Id.* (citations omitted). Two lesser factors for consideration by the courts are convenience and the interest of the forum state. *Id.* Additionally, the *Masada* court observed:

> The phrase 'fair play and substantial justice' must be viewed in terms of whether it is fair and substantially just to both parties to have the case tried in the state where the plaintiff has chosen to bring the action. In each case the quality and nature of those activities in relation to the fair and orderly administration of law must be weighed. . . . [T]his must involve some subjective value judgment by the courts.

*Id.* at 335 (quoting *Shelby Mutual Ins. Co. v. Moore*, 645 S.W.2d 242, 246 (Tenn. Ct. App. 1981)).

Moreover, as this Court recently has noted, "[d]ue process requires that individuals be given 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign.'" *Attea v. Eristoff*, No. M2005-02834-COA-R3-CV, 2007 WL 1462206, at *2 (Tenn. Ct. App. May 18, 2007)(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)). In order for the fair warning requirement to be met, the defendant must have "'purposefully directed his activities toward the citizens" of the forum state. *Masada Inv. Corp. v. Allen*, 697 S.W.3d 332, 334-335 (Tenn. 1985); *Attea*, 2007 WL 1462206, at *2 (quoting *Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 774 (1984)). Further, the lawsuit must stem from injuries allegedly arising from or relating to those activities. *Masada*, 697 S.W.3d at 334-335; *Attea,* 2007 WL 1462206, at *2 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). The focus of our inquiry here is not on the unilateral activity of AHI, the party asserting jurisdiction, but on whether this litigation arises out of some act of Mr. Patterson whereby he purposefully availed himself of the privilege of conducting activities within Tennessee, thus invoking the benefits and protections of the laws of this State. *See Masada,* 697 S.W.3d at 334-335; *Attea*, 2007 WL 1462206, at *3 (quoting *Asahi Metal Ind. Co. v. Super. Ct. of California, Solano County*, 480 U.S. 102, 109 (1987)).

In this case, Mr. Patterson's contacts with Tennessee are limited to being employed in Texas by AHI, a Delaware corporation that maintains its primary place of business in Tennessee; spending a total of eight days in Tennessee during a two-and-a-half year period for training purposes as directed by AHI; maintaining daily telephone and email contact with AHI personnel located in Tennessee in the furtherance of AHI's business and as required by AHI. It is undisputed that Mr. Patterson's activities as a community advocate were directed only at Texas residents; that his sales were to Texas customers; and that the only activity directed at any Tennessee resident consisted of communication with other AHI employees. Moreover, Mr. Patterson was recruited in Texas; the contract between AHI and Mr. Patterson was executed in Texas; Mr. Patterson did not direct or assume responsibility for any AHI activity in Tennessee; his actions did not affect the policy or governance of AHI or its employees; and the activities giving rise to this lawsuit did not arise from activity conducted in Tennessee.

Additionally, Mr. Patterson's consent to being subject to Tennessee substantive law through the choice of law provision is not a purposeful availment of Tennessee law such that Mr. Patterson may reasonably have anticipated being haled into court in Tennessee. The employment agreements included in the record are detailed and comprehensive; had AHI intended to include a forum selection clause, it easily could have done so. Indeed, one would reasonably assume that AHI would have included such a provision had it intended to provide fair warning that Mr. Patterson should have anticipated defending an action in Tennessee.

### *Holding*

In light of the quality, nature, and extent of Mr. Patterson's contacts with Tennessee, we agree with the trial court that the exercise of personal jurisdiction by a Tennessee court would offend "traditional notions of fair play and substantial justice" in this case. The judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellants, Accredo Health Incorporated and Accreda Health Group, Inc., and their surety, for which execution may issue if necessary.

DAVID R. FARMER, JUDGE